## *Robert Smith and Mathew Pearce, who [*468 survived John Craig, assignees of James Yard a bankrupt *against* John Odlin.

*Indebitatus assumpsit* will not lie for an insurance premium. A parol insurance is valid. *Semble.*

Though a judge on the trial should declare that the evidence did not support the action, it is no ground for a new trial, unless he persists in that opinion.

THIS cause was tried at the last court of Nisi Prius in the city, on the 5th December last, before Mr. Justice BRACKENRIDGE, when the jury found for the plaintiffs $2151 and 93 cents, on the following facts, which appeared by the report of the judge.

On the 15th August 1801, an agreement was made between Yard and Odlin, wherein after stating that they contemplated a voyage to be performed on their joint account, it was stipulated that the former should furnish $24,827 and 56 cents and the latter $12,413 and 78 cents for their advances on the brig Paragon and her cargo; Odlin was to go as consignee, and receive a commission of 5 per cent.

On the 24th August 1801, Yard made an insurance on his own account on $4500 at a premium of 12½ per cent, and on the 11th November following on $11,700 at 16 per cent. These policies he lodged in the month following, before his bankruptcy, with Clement Biddle an insurance broker, with orders to have assignments drawn thereon to Odlin. The assignments were drawn accordingly, but were not executed by Yard; who shortly after sailed to Spain.

An assignment was made by James Yard to the plaintiffs of all his effects, on the 18th December 1801. On the 22d January 1802, a commission of bankrupt issued against him; and he

[Smith and Pearce *v.* Odlin.]

obtained his certificate of conformity on the 24th March following.

On the 24th April 1805, an interchange of accounts took place between Yard and Odlin, but without prejudice to the parties upon the present demand. The defendant was charged therein with $6204 received by him as consignee on the voyage, and also with $3103 and 44 cents for a premium on $9310 and 44 cents on his share of the brig at 33⅓ per cent, leaving a balance of $2151 and 93 cents due from Odlin in case the charge of the premium was correct.

Yard, having released to the assignees his share of the surplus, was examined as a witness. He testified, that previous to the brig sailing on her voyage, he accompanied Odlin to one of the insurance offices in the city, to effect an insurance on Odlin's interest of one third of the property ; and that on a demand of 40 per cent premium being made they thought it unreasonable, and Yard dissuaded him from acceding to those terms. He proposed *to him, that he (Yard) would become his insurer at 25 per cent and cover the premium at 33⅓ long covering premium. This was acceded to ; and they settled their accounts accordingly, the defendant being charged with the premium and receiving a check for the balance of $93 and 32 cents which was duly paid. This balance upon examination of the account should have been $99 and 32 cents, but how the error occurred was not explained.

The defendant in order to discredit the testimony of Mr. Yard, adduced a captain Joseph Wildes ; who testified, that when the embarrassment of Yard became public, he carried a letter from the wife of the defendant to him requiring him to deliver up the policy of insurance which he had engaged to effect for her husband ; and received for answer, that it was very accurate, that the insurance was not yet effected, but he would have it done.

Yard, on his cross examination, did not recollect Wildes's calling on him with this letter ; but it appeared, that the meditated assignment recited, that Yard had assumed to insure for Odlin, and that the assignment was intended as an indemnity to him, in case a loss should happen.

And it also appeared, that Yard required of his assignees, shortly after his bankruptcy, to effect a further insurance for Odlin ; and that in consequence thereof, the sum of $12,600 and 80 cents was procured by them to be underwritten, for and on account of him.

The voyage contemplated by the agreements of 15th August 1801, was from the port of Philadelphia to Porto Cavallo on the Spanish Main, and from thence to some other port in Spain ; the insurance on the first voyage meditated an indemnity against the usual risks attending fair American trade ; and on the second voyage the further risk of capture by any of the belligerent powers. The brig sailed and completed her voyage safely.

[Smith and Pearce *v.* Odlin.]

This suit was brought to December term 1802, and the declaration was filed for money had and received : upon the trial, two questions were made.

1st. Whether evidence of a parol insurance would support a demand for a premium ; or whether evidence of a written policy or instrument in the nature of a policy, must be produced ; or evidence given of its having existed ?

2d. Whether the evidence adduced by the plaintiffs in this case, was sufficient to support their declaration ?

Upon the trial, Judge BRACKENRIDGE expressed an opinion, that the plaintiffs had not made out their case ; but he would not now declare his dissatisfaction with the verdict.

Since the verdict, a motion for a new trial was made, on an additional *ground, that the verdict was contrary to law, evidence, and the charge of the court.            [*470

Mr. Levy, argued for the defendant, in support of the motion.

This is the first time, that the validity of a parol insurance has been insisted on, in the United States.   The novelty of the case furnishes a strong argument against it.   Few or no authorities are to be collected from our books, in such an action.   We must be contented to reason from analogy, and the inconveniences resulting from suits of this nature.

Insurance is a contract, whereby one party, in consideration of a stipulated sum, undertakes to indemnify the other, against certain perils or risks to which he is exposed, or against the happening of some event.   The insurer subscribes his name at the foot of the policy.   1 Marsh. 1.   The statute of 43 Eliz. c. 12, " concerning matters of assurance used among mer- " chants," points evidently to written policies : and directs that certain commissioners shall hear and determine them.   2 Ruff. stat. 718.   And the act of congress of 6th July 1797, c. 11, § 1, prescribes the stamp duties payable on every policy of insur- ance. or instrument in nature thereof.   4 U. S. Laws 20.

The setting up of verbal insurances would evade all statutory provisions on such instruments.   A report of referees has been set aside in this court, because the charge of premium and com- mission for making an insurance had been allowed, without re- quiring the policy to be produced, or any proof of its being lost : and this is laid down broadly, to be the only evidence, that in such cases can be admitted in any court, either of civil or com- mon law jurisdiction.   Williams *v.* Craig, 1 Dall. 316.   In Mas- ter *v.* Miller, Mr. Justice BULLER says, " till the late act was " made, requiring the name of the person interested to be in- " serted in the policy, the constant course was to make the pol- " icy in the name of the broker ; and yet the owner of the goods " maintained an action upon it."   4 T. R. 342.   It will not be contended, that this could be done on a parol insurance ; or that

[Smith and Pearce *v.* Odlin.]

a suit might be maintained by an indorsee, on a promissory note or bill of exchange, merely verbal in themselves.

Parol insurances are productive of every species of fraud and perjury, combined with uncertainty. The aspect of written instruments does not change : but impressions on the memories of the best and most intelligent men fade and vary. Can it be expected that warranties can be accurately ascertained by parol testimony ? Where there is no written contract, are the 30 days to elapse, after the notice given of the loss, before the indem-*471]* nity *can be demanded ? Is the usual deduction of 2 per cent to be made in such cases ?

But even admitting the validity of a parol insurance, the evidence did not maintain the form of action. The agreement of August 1801, contained a general estimate of the intended voyages ; and the accounts were not sufficient evidence to support a suit for the premium. *Indebitatus assumpsit* supposes a preexisting debt, on which the promise to pay is grounded ; and it is said to lie in no case, except where debt lies. If the demand of the plaintiffs was recoverable, they should have declared in special assumpsit.

It has been attempted to be shewn, that the verdict was against law. It is also contrary to evidence, and the charge of the court. Mr. Yard admitted, that his memory was bad ; and this was strongly exemplified on the trial. He forgot the transaction with Wildes, he cannot shew why his check was drawn for $93 32 cents, instead of $99.32, the true balance, which he declared he had paid. The case demands reconsideration. Why shall Yard obtain an insurance on his own property, at 12½ and 16 per cent. yet without any other testimony than his own oath, charge his partner 33⅓ per cent. for the same risks ?

Mr. Rawle, for the plaintiffs. It is not pretended, that parol insurances are attended with the same degree of certainty and precision as when contained in written policies ; nor is there any danger of such verbal engagements of indemnity being brought into general practice. The question is not, whether written or unwritten insurances would most conduce to the interests of a commercial country ; but whether if a parol contract of indemnity is proved really to have existed, the parties thereto would not be mutually bound thereby ?

It is not essentially necessary, that policies should be in writing ; nor was it so formerly in France. 1 Emerig. 26. At this day, a parol insurance under 100 dollars, is good ; but we have no statutory provisions either in America or Great Britain, on this subject. The statute of 43 Eliz. c. 12, does not enact, that policies shall be in writing, though it is admitted to be the usual mode of transacting the business of insurance. It does not however follow, that where the indemnity is by parol, it shall be invalid. We have no positive institutions interdicting a person from binding himself by an express promise in words only, for

an honest consideration.   It is true, one who subscribes his name to a policy, is thereby denominated an underwriter; and the fact of insuring is thereby easily susceptible of proof; but no one is prevented from recurring to the proof of an oral engagement of indemnity, if he chooses to run that risk.   An insurer would *not be allowed to object the want of a written subscription, as a ground of non-payment, in the [*472 case of a loss.   And why if no loss has happened, shall the insured in such a case, evade the payment of the stipulated premium?   The contract must bind on both sides mutually, or not at all.   If one undertakes to insure for another, and does not, he will be liable in an action, to such damages as would be recovered from the insurers.   And so in the case of a correspondent abroad, ordering his agent in this country to make an insurance, which he neglects to make.   *Vide* 4 Bro. Cha. Rep. 488. In Williams *v.* Craig, the plaintiff wrote to the defendant, that he had effected insurance for him; but gave no proof whatever of his having so done.   And as to the *dictum* of Buller, which has been cited, it is clear, that the law merchant is a law of good faith; and an act stipulated to be performed, will be considered as done.   The parol acceptance of a bill of exchange is equally binding, as if the party on whom it was drawn had subscribed his acceptance.   But the case of the plaintiffs depends not solely on parol testimony.   The extent of the warranty is defined by the written agreement.   The voyage, interest, risk and premium are expressed in the accounts, which the defendant has signed.   This is tantamount to a policy, wherein no particular form is necessary.   The only real question between the parties is, did the person who is now become bankrupt, become the insurer?

The suit for money had and received, was brought to recover monies which had been received by Odlin, as the consignee of Yard.   When the accounts were interchanged on the 24th April 1805, subsequent to the commencement of the action, the defendant admitted by his signature, that he had received 6204 dollars of the proper monies of the bankrupt, and was entitled to certain credits.   Every article of the account was amicably adjusted, except the charge for the premium, and the balance struck without prejudice.   If the estate of Yard, was credited with the item of premium, it would necessarily augment the balance due from Odlin.

In an action by the insurer for money had and received to his use, against the owners, it was objected, that this action would not lie for premiums against the insured themselves.   Lord MANSFIELD thought the objection came too late, and would not enter into it, when the jury were ready to give their verdict; although he seemed to think there was nothing in the objection. Gist *v.* Mason, 1785. Park. 26, (29, 1st edit.)

It is admitted that the judge told the jury, the case had not been made out on the part of the plaintiffs; but he will not now

undertake to say that he thinks the verdict wrong. The cause went to the jury, on the credibility of Yard's testimony, of which *473] *they were the sole judges, and a broker has been admitted to give evidence of the instructions he has received. 2 Dall. 300. The honesty of Yard was not questioned ; the correctness of his memory only was impeached. An error of six dollars might occur in the settlement of an account, and the transaction of Wildes's having delivered him a letter, might have escaped his recollection ; but the recital in the assignment, and his request to his assignees to make a further insurance for the defendant, which was effected accordingly, strongly corroborate the testimony which he has given. In every view of the case, it was highly proper, that the jury should exercise their judgment upon it.

The argument which has been urged from the act of congress, laying a stamp duty on written policies of insurance, has no weight. The same objection might be made against proving any debt by parol testimony ; inasmuch as bonds and promissory notes, which are proper evidence of debts, are also made liable to certain stamp duties, by that act.

TILGHMAN, C. J. This is an action of *indebitatus assumpsit* for money had and received, which was tried before Judge BRACKENRIDGE, and a verdict found for the plaintiffs for $2151 and 93 cents.

It appears from Judge BRACKENRIDGE's report of the evidence, that Yard and Odlin were owners of the brig Paragon and her cargo, in partnership. Yard's share was two-thirds, and Odlin's one-third. Before the brig sailed, Yard, who was sworn as a witness in the cause, says, that he went with Odlin to one of the insurance offices, to effect an insurance on Odlin's one-third. The premium asked at the office, was, in the opinion of both of them, too high, and he advised Odlin not to give it : he offered, if Odlin chose, to insure for him himself at 25 per cent., and cover the premium at 33⅓ long covering premium. To this Odlin consented, and their accounts were settled, Yard having charged Odlin with the premium, and paid him the balance of the account. The brig was bound on a voyage from Philadelphia to a port on the Spanish Main, and from thence to a port in Spain. Odlin was captain and consignee, and had power to sell Yard's share of the cargo, for which he was to have a commission. No written policy of assurance was signed by Yard ; but it appeared by a writing signed by Odlin, that the insurance to be made by Yard, from Philadelphia to a port on the Main, contemplated the usual risks of fair American trade ; that from the Main to Spain contemplated the hazard of capture by any belligerent power. These transactions took place about the middle of August 1801 ; soon after which the brig sailed on her voyage, which she completed in safety.

After she sailed Yard procured some insurance on the voy-

[Smith and Pearce *v.* Odlin.]

*age from the Main to Spain, and about December 1801, stopped payment. In the same month, he lodged the policies which he had procured, with Clement Biddle, with directions to draw an assignment to Odlin. The assignment was drawn, but owing to Yard's hurry he forgot to execute it; and not long after, he went to Spain to transact the business of the estate at the request of the assignees. The assignment recites, that Yard had assumed to insure for Odlin, and that it was intended as an indemnity to Odlin in case of loss. Yard, soon after his insolvency, requested his assignees to procure further insurance for Odlin, and they did procure an insurance in the name of Odlin, for $12,600 and 80 cents. This was the substance of Yard's testimony, on which the plaintiffs rested their cause.

The defendant, by way of invalidating the testimony of Yard, produced a witness by the name of Joseph Wildes, who swore, that when Yard's insolvency was known, he called on him with a letter from Mrs. Odlin, requesting him to deliver the policy of insurance which he had undertaken to procure for her husband; that Yard said it was very accurate, the insurance was not yet made, but he would have it done. On Yard's cross examination, he appeared to have forgot the circumstance of Wildes' calling on him. The defendant also proved, that the sum, which Yard said he had paid for the balance of the account in August 1801, was six dollars different from the actual balance; and from this, and other circumstances not necessary to detail, it was concluded that Yard's memory was too defective to rely on.

The credit due to Mr. Yard's memory (for his integrity was not impeached) was a matter of which, under all circumstances, it was proper for the jury to judge. If they relied on it, and it seems they did, there can be no reason for a new trial on that ground.

But the defendant's counsel brought forward two exceptions to the verdict, founded on points of law:

1st. That in an action for money had and received, the plaintiffs could not recover the premium of an insurance.

2d. That a parol insurance is void.

1st. There can be no doubt but the principle is just, that an *indebitatus assumpsit* for money had and received, is not the proper form of action for recovering a premium of insurance.* But to this objection it has been answered, that this action was not brought to recover the premium which was settled in the account of August 1801, if Mr. Yard's evidence was correct; but to recover money, which the defendant had afterwards received as the agent of Yard. A communication had taken place *between the parties pending the action. Odlin claimed [475* an allowance for the premium, which he alledged had been unjustly retained by Yard, because he had not effected an insur

---

* *Indebitatus assumpsit* will lie for the premium of a policy.   2 Lev. 153.

ance for him.   It was at length agreed, that Odlin should pay so much of Yard's claim as would balance the account, deducting the premium, the amount of which should remain subject to dispute.   Both parties came to trial, prepared to contest the real object of dispute upon its merits ; so that the objection as to the form of action is not to be favoured.   I think, the explanation offered by the plaintiff's counsel is a sufficient answer to the objection.   Yard swore, that the premium was settled in August 1801.   Whether he was accurate in that was matter of consideration for the jury.

2. As to the validity of a parol insurance I do not mean to give an opinion ; because, I do not think it necessary for the decision of the point before the court.   The question is, whether Yard was entitled to the premium, which is the subject of dispute.   Taking the evidence altogether, I think it leads to the conclusion, that Yard was to keep Odlin indemnified from the risks mentioned in the writing signed by Odlin.   This he might do, either by underwriting a policy himself, or by procuring others to underwrite.   If he did not do one or the other, Odlin might support a special action on the case against him.   Yard being thus responsible, there is no reason why he should not retain the premium which was the price of his responsibility.

It was mentioned as an additional reason for a new trial, that the verdict of the jury was against the charge of the court.   It is true, that the judge in his charge did incline to the opinion, that the action was not supported by the evidence, and this would have very great weight with me, if the judge, after reporting the evidence, had not declared, that upon reflection, he would not say, that he was dissatisfied with the verdict. ·

Upon the whole, I am of opinion, that the defendant has not shewn sufficient cause for a new trial.

YEATES and BRACKENRIDGE, justices, concurred.

SMITH, J.   As the chief justice has stated the facts correctly, I will not repeat that statement.   But as I cannot concur in the opinion which he has delivered, it is incumbent on me to state the reasons of my dissent.   I know that my brothers do not suppose me capable of differing from them, by an affectation of singularity, or with a view to court popularity, or to avoid the reverse on popular questions.   When I am compelled to differ from the majority of the court, it becomes me not to be arrogantly confident in my own judgment ; but such as it is, I must be *476]  *guided by it.   I am the less diffident of it, because it very generally leads me to concur with my brothers.

Although the action for money had and received, is not the proper action to recover a premium of insurance, yet I would be willing to join in the refinement, by which the rest of the court overcome that objection ; because a judge ought never to turn a plaintiff round, on account of the form of the action, when he is entitled to recover in any other form, unless supporting the

[Smith and Pearce *v.* Odlin.]

action in its present form would tend to confound all forms of action, which experience convinces us, would produce great confusion and injustice.

I will not say, that a parol insurance may not be valid ; but it is certainly worthy of remark, that there is no instance that I ever heard or read of, where such insurance has been made. Were it sanctioned, it would from the nature of the transaction, be productive of much more uncertainty and inconveniency, of fraud and perjury, than parol sales of land. Parol sales of land are rendered invalid by positive law ; parol insurances are not ; and by the general principles of contract, I cannot say, that such a contract may not be valid ; but to be so, I conceive that it ought to be proved clearly and beyond a doubt ; the full extent and limits of it ought to be ascertained by unexceptionable evidence ; a doubt in the separticulars ought to be fatal to an action on it. Could this action be supported without the evidence of James Yard ? If it could not, that evidence cannot support it ; because every contract must be either valid or void at the time of making it. It cannot become the one or the other by any subsequent contingency ; there ought to be mutual remedies on it subsisting at the time of making, or it is null and void. It is not sufficient, that a remedy may arise on an uncertain event. If the plaintiffs here had a remedy, exclusive of the testimony of Yard, why was his testimony introduced ?

His evidence is not reconcilable with that of Wildes. He certainly betrays a great want of memory in particulars, important to satisfy the mind ; his evidence seems not very consistent with the nature of the transaction, it was produced to establish.

The memorandum is not certain. It ought to have been as certain as the policy itself ; or at least, as certain as the memorandum delivered to underwriters in such cases. It is not stated, whether there was to be any warranty ; consequently, the extent of that warranty is unknown. Into what confusion would this uncertainty have led, had the vessel been lost ?

Favorable cases make bad precedents. If this verdict be established on the good character of Mr. Yard, similar verdicts will be established on characters not so unexceptionable.

*Upon the whole, after the short consideration which [*477 the various business in the court has enabled me to devote to this case, I am much afraid, that should we sanction this verdict and principle,

> " 'Twill be recorded for a precedent;
> " And many an evil by the same example
> " Will rush into the state."——

I am of opinion, that the case requires deliberate reconsideration ; but as the rest of the court are of a different opinion, the motion for a new trial is denied, and judgment for the plaintiffs.